UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :

UNITED NATURAL FOODS, INC.,         :

                 Plaintiff,         :

           - against -         :

GOLDMAN SACHS GROUP, INC.;    :     No.: 1:19-cv-01607-LLS
GOLDMAN SACHS BANK USA;      :
GOLDMAN SACHS LENDING PARTNERS, :     **ORAL ARGUMENT**
LLC; STEPHAN J. FELDGOISE; BANK OF :     **REQUESTED**
AMERICA, N.A.; and MERRILL LYNCH, :
PIERCE, FENNER & SMITH        :
INCORPORATED                 :

                                          :

              Defendants.     :

                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OF LAW IN SUPPORT OF U.S. BANK NATIONAL ASSOCIATION'S MOTION TO INTERVENE AND TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP AS COUNSEL FOR PLAINTIFF

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for U.S. Bank National Association*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND .............................................................................................. 4

    A.    Quinn's Representation of U.S. Bank .................................................. 4

    B.    The UNFI Actions ............................................................................. 5

ARGUMENT ................................................................................................... 8

I.    The Court Should Allow U.S. Bank to Intervene to Move to Disqualify Quinn ............... 8

    A.    U.S. Bank Has a Right to Hold Quinn to Its Ethical and Legal
        Obligations ........................................................................................ 8

    B.    The Court Should Permit U.S. Bank to Intervene in Order to Avoid
        Undue Prejudice ................................................................................ 9

II.    The Court Should Disqualify Quinn from Representing UNFI in This Action ............... 11

    A.    Quinn's Representation of UNFI Violates the Commitments in Its
        Engagement Letter with U.S. Bank ................................................... 12

    B.    By Attacking the Loan Transaction, Quinn Is Directly Adverse to
        U.S. Bank ........................................................................................ 13

    C.    Quinn Cannot Avoid Its Conflict by Having Another Firm Sue U.S.
        Bank ................................................................................................ 20

CONCLUSION ................................................................................................ 24

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*Arrowpac Inc. v. Sea Star Line, LLC*,
   No. 12-cv-1180, 2013 WL 5460027 (M.D. Fla. Apr. 30, 2013) .................................... *passim*

*Avacus Partners, L.P. v. Brian*,
   No. 11001, 1990 WL 6576 (Del. Ch. Jan. 23, 1990) ....................................... 16, 20

*Blue Planet Software, Inc. v. Games Int'l, LLC*,
   331 F. Supp. 2d 273 (S.D.N.Y. 2004) ............................................................. 11, 12

*Celgard, LLC v. LG Chem, Ltd.*,
   594 F. App'x 669 (Fed. Cir. 2014) .................................................................. 16, 18

*Cinema 5 Ltd. v. Cinerama Inc.*,
   528 F.2d 1384 (2d Cir. 1976) ......................................................................... 11, 13

*Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*,
   No. 06 Civ. 2875, 2007 WL 2593000 (S.D.N.Y. Sept. 7, 2007) ............................................. 9

*Discotrade Ltd. v. Wyeth-Ayerst Int'l, Inc.*,
   200 F. Supp. 2d 355 (S.D.N.Y. 2002) ..................................................................12

*Dr. Falk Pharma GmbH v. Generico, LLC*,
   -- F.3d --, 2019 WL 692670 (Fed. Cir. Feb. 20, 2019) ....................................... 13

*Emle Indus., Inc. v. Patentex, Inc.*,
   478 F.2d 562 (2d Cir. 1973) ........................................................................... 12

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
   255 F.R.D. 308 (D. Conn. 2009) ........................................................................... 11

*First NBC Bank v. Murex, LLC*,
   259 F. Supp. 3d 38 (S.D.N.Y. 2017) ........................................................................ 11

*Flather v. U.S. Trust Co. of N.Y.*,
   No. 93 Civ. 7504 (RPP), 1994 WL 376088 (S.D.N.Y. July 15, 1994) ................................. 12

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*,
   567 F.2d 225 (2d Cir. 1977) ........................................................................... 21, 22

*GATX/Airlog Co. v. Evergreen Int'l Airlines, Inc.*,
   8 F. Supp. 2d 1182 (N.D. Cal. 1998) ................................................................. 9, 16

*GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*,
   618 F.3d 204 (2d Cir. 2010)...........................................................11, 12, 14, 18, 19

*Hull v. Celanese Corp.*,
    513 F.2d 568 (2d Cir. 1975) ............................................................ 12

*Kirby v. Coastal Sales Assocs.*,
    199 F.R.D. 111 (S.D.N.Y. 2001) .................................................. 9, 10

*Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*,
    542 F. Supp. 2d 296 (S.D.N.Y. 2008) ............................................ 10

*N. River Ins. Co. v. O&G Indus.*,
    315 F.R.D. 1 (D. Conn. 2016) ........................................................ 10

*New York v. United Parcel Serv., Inc.*,
    No. 15-cv-1136, 2016 WL 10672076 (S.D.N.Y. Sept. 2, 2016) ........... 14

*Olin Corp. v. Lamorak Ins. Co.*,
    325 F.R.D. 85 (S.D.N.Y. 2018) ...................................................... 10

*Oxford Sys., Inc. v. CellPro, Inc.*,
    45 F. Supp. 2d 1055 (W.D. Wash. 1999) ......................................... 9

*Rembrandt Techs., LP v. Comcast Corp.*,
    No. 05-cv-443, 2007 WL 470631 (E.D. Tex. Feb. 8, 2007) ......... 9, 16, 18

*Ryan v. Volpone Stamp Co.*,
    107 F. Supp. 2d 369 (S.D.N.Y. 2000) ............................................ 13

*Sherman v. Town of Chester*,
    339 F. Supp. 3d 346 (S.D.N.Y. 2018) .............................................. 8

*In re Snyder*,
    472 U.S. 634 (1985) ....................................................................... 11

*Spencer Stuart Human Res. Consultancy Co. v. Am. Indus. Acquisition Corp.*,
    No. 17-cv-2195, 2017 WL 4570791 (S.D.N.Y. Oct. 12, 2017) ........... 20

*Sumitomo Corp. v. J.P. Morgan & Co.*,
    No. 99-cv-4004, 2000 WL 145747 (S.D.N.Y. Feb. 8, 2000) ........... 22, 23

*United States v. Baird*,
    No. CRIM.A. 6:05-30, 2005 WL 1676898 (E.D. Ky. July 15, 2005) ...... 21

*United States v. N.Y.C. Hous. Auth.*,
    326 F.R.D. 411 (S.D.N.Y. 2018) .................................................. 9, 10

*Vanderveer Grp., Inc. v. Petruny*,
    No. 93-3677, 1994 WL 314257 (E.D. Pa. June 29, 1994) ............. 16, 21

S<small>TATUTES</small> & R<small>ULES</small>

ABA Model Rule 1.7 ................................................................................ 14

Fed. R. Civ. P. 19..................................................................................20

Fed. R. Civ. P. 24 ........................................................................ 8, 9, 10

N.Y. R. Prof'l Conduct 1.0 .................................................................. 14

N.Y. R. Prof'l Conduct 1.7 ............................................................. 1, 14

O<small>THER</small> A<small>UTHORITIES</small>

82 N.Y. Jur. § 105 ............................................................................... 20

ABA-BNA, Lawyers' Manual on Professional Conduct (2007) ...............................11, 23

N.Y. City Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 2001-3 ....................... 21, 23

N.Y. City Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 2017-6 ............................ 21

Restatement (Third) of the Law Governing Lawyers (2000) ..................................... 11

U.S. Bank National Association ("U.S. Bank") respectfully submits this memorandum of law in support of its motion to intervene in this action and to disqualify the law firm of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") from representing plaintiff United Natural Foods, Inc. ("UNFI") in this action.

## PRELIMINARY STATEMENT

Quinn represents U.S. Bank in a number of matters across the country.  In its engagement letter, Quinn promised that, "[i]f . . . contentious disputes or threats of litigation involving U.S. Bank arise during our representation of another client and U.S. Bank, we would *not* represent the other party with respect to such disputes or litigation."  (Ex. A at 5 (emphasis added).[1])  It further agreed "to refrain from representing any other party to a transaction or dispute involving any USB entity."  (Ex. B at 2.)  And the New York Rules of Professional Conduct prohibit a lawyer from representing a client if "a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests."  N.Y. R. Prof'l Conduct 1.7(a).

Nevertheless, on January 30, 2019, on behalf of UNFI Quinn filed this lawsuit (the "*Goldman/BOA* Action"), which alleges that Goldman Sachs, Bank of America, and U.S. Bank[2]—the three lenders of a $2.15 billion loan to UNFI—wrongfully withheld millions of dollars in fees and wrongfully exercised certain rights during the lenders' syndication of the loan. If successful, Quinn will have established a breach of the lenders' contract with UNFI and millions of dollars in alleged damages.  Acknowledging its conflict with U.S. Bank, Quinn did not name U.S. Bank as a defendant in the *Goldman/BOA* Action.  Instead, the very same day that Quinn filed its complaint, UNFI filed a nearly verbatim complaint against U.S. Bank through a

---

[1] "Ex. __" refers to the exhibits attached to the accompanying Declaration of Lawrence Portnoy, dated March 8, 2019.

[2] As used herein, "Goldman Sachs" refers to defendants The Goldman Sachs Group, Inc., Goldman Sachs Bank USA, Goldman Sachs Lending Partners, LLC, and Stephan Feldgoise.  "Bank of America" refers to defendants Bank of America, N.A. and Merrill Lynch, Pierce, Fenner & Smith Incorporated.

separate law firm, Coburn & Greenbaum.  Except for one difference, the complaint in that case
(the "*U.S. Bank* Action") asserts the same causes of action against U.S. Bank that the complaint
in the *Goldman/BOA* Action asserts against Goldman Sachs and Bank of America, arising from
the same contracts, alleging the same breaches, and seeking the same damages.  Quinn, in other
words, is directly attacking a transaction in which its current client, U.S. Bank, was a key
participant.  Any action taken by Quinn in this case is therefore directly adverse to its current
client, and involving another law firm does not change that fact.

Because Quinn's representation of UNFI is adverse to U.S. Bank, the Court should grant
U.S. Bank's motion to intervene and to disqualify Quinn from representing UNFI in the
*Goldman/BOA* Action.

*First*, U.S. Bank is entitled to intervene in this action as a matter of right because it has an
unqualified interest in ensuring that its counsel at Quinn does not litigate a dispute adverse to it.
Indeed, UNFI is suing U.S. Bank in the *U.S. Bank* Action under the same contracts and for the
same alleged conduct that it asserts—through Quinn—entitles it to damages against Goldman
Sachs and Bank of America in this case, directly implicating U.S. Bank's legal rights.  If Quinn
were somehow to establish in the *Goldman/BOA* Action that the lenders unlawfully withheld
their fees, then U.S. Bank would directly suffer adverse consequences.  Courts routinely find that
clients are entitled to intervene in order to seek disqualification of their conflicted attorneys.
Even absent intervention as a matter of right, the Court has broad discretion to permit U.S. Bank
to intervene in this case to vindicate its interests.

*Second*, Quinn is representing UNFI in a matter that involves U.S. Bank, and Quinn never
obtained or even sought U.S. Bank's informed consent, in clear violation of its engagement letter.
Moreover, that representation is directly adverse to U.S. Bank, contrary to well-settled ethical

rules.  The existence of direct adversity is plain from the nature of the *Goldman/BOA* Action, which claims that *all* of the lenders—*including U.S. Bank*—are liable for breaching their agreement with UNFI.  In other words, UNFI (through Quinn) maintains in the *Goldman/BOA* complaint that U.S. Bank committed the same wrongdoing as Goldman Sachs and Bank of America.  If there was any doubt regarding UNFI's allegations as to the liability of U.S. Bank, it is eradicated by the fact that UNFI filed a complaint based on the same factual allegations against U.S. Bank in the *U.S. Bank* Action the very same day that it initiated the *Goldman/BOA* Action. The timing is telling:  This was not a later-devised litigation strategy that simply picked up on previous work product; it was a carefully coordinated multi-front assault, and Quinn's involvement in that assault is undeniable.  It is immaterial that Quinn has not named U.S. Bank in this action and thus claims that it is not directly litigating against U.S. Bank.  Courts have frequently recognized that law firms like Quinn are prohibited from representing clients where that representation is directly adverse to a client, even if that client is not a defendant in the case.

Quinn's and UNFI's contrivance of arranging for Quinn to file a complaint against Goldman Sachs and Bank of America (two of the lenders to UNFI) in the *Goldman/BOA* Action while having another firm separately file a largely identical complaint against U.S. Bank (the other lender) in the *U.S. Bank* Action on the very same day does not solve Quinn's conflict. Under Second Circuit law, regardless of which law firm is directly litigating against U.S. Bank, Quinn's representation of UNFI in the *Goldman/BOA* Action is adverse to U.S. Bank and requires disqualification.  This is especially true here because Coburn & Greenbaum, purportedly acting as "conflicts counsel," was aided by Quinn in suing U.S. Bank—as evidenced by the essentially identical language in the nearly simultaneous complaints filed in the two actions. (*See* Ex. C (blackline of the complaints).)

## BACKGROUND

### A.   Quinn's Representation of U.S. Bank

In 2012, Quinn entered into an engagement letter to represent U.S. Bank in its capacity as trustee for certain residential mortgage-backed securities trusts and in connection with litigation related thereto.  In total, Quinn has represented U.S. Bank in more than a dozen cases over the last seven years, a number of which remain pending in New York State court and federal courts around the country.  Quinn itself uses those representations in its advertising on its website.[3]

The engagement letter governing the relationship between Quinn and U.S. Bank, issued on Quinn's letterhead, contains a section devoted to "Conflicts Issues."  (Ex. A at 4-5.)  Among other things, the letter expressly provides that, regardless of the capacity in which Quinn represents U.S. Bank, Quinn agrees that "[i]f . . . contentious disputes or threats of litigation involving U.S. Bank arise during our representation of another client and U.S. Bank, [Quinn] would not represent the other party with respect to such disputes or litigation."[4]  (*Id.* at 5.)

The engagement letter also expressly incorporates by reference U.S. Bank's Guidelines for Outside Counsel, and Quinn agreed to act in accordance with them.  (*Id.* at 7.)  Those guidelines, annexed to the engagement letter, contain an additional section on "Conflicts of Interest."  (Ex. B at 1-2.)  Specifically, they provide that "USB's outside counsel must comply with all applicable rules of legal ethics regarding conflicts of interest" and "[a]ny actual or

---

[3] *See, e.g.*, Quinn, "Distressed Investment Litigation: Recent Representations," https://www.quinnemanuel.com/practice-areas/investment-fund-litigation/distressed-investment-litigation/ ("We represent US Bank as administrative agent for first-lien, term loan lenders in connection with this troubled ironore project and ESML's inevitable restructuring.  We also represent US Bank in connection with the lenders' guaranty claim against ESML's parent . . . and related international collection efforts in more than six venues."); Quinn, "Structured Finance & Derivatives Litigation: Recent Representations," https://www.quinnemanuel.com/practice-areas/structured-finance-and-derivatives-litigation/ ("We represent U.S. Bank as trustee for multiple RMBS trusts."); Quinn, "December 2016: Significant Interim Victory in First Trial of RMBS 'Putback' Claims," https://www.quinnemanuel.com/the-firm/our-notable-victories/victory-december-2016-significant-interim-victory-in-first-trial-of-rmbs-putback-claims/ ("The firm recently achieved an important trial victory for its client U.S. Bank.").

[4] The engagement letter identifies certain narrow circumstances under which Quinn may be adverse to U.S. Bank.  None of those circumstances is applicable here.

potential conflicts must be discussed with USB at the time of the engagement or as soon as the conflict becomes known." (*Id.* at 1.) Moreover, due to the prejudice that would result should its outside counsel ever want to attack a transaction to which U.S. Bank was a party, the guidelines provide that, "[w]hether or not required by applicable ethical rules, USB asks any outside counsel . . . to refrain from representing any other party to a transaction or dispute involving any USB entity . . . unless you have received USB's prior written consent to representation of the other party." (*Id.* at 1-2.) USB expressly noted that it "will not consent to its outside counsel representing another party in a dispute with [or] asserting claims against . . . USB." (*Id.* at 2.)

## B.    The UNFI Actions

This action arises out of a commitment by three lenders—Goldman Sachs, Bank of America, and U.S. Bank (the "Arrangers")—to fund a $2.15 billion loan to UNFI for its acquisition of SUPERVALU Inc. ("Supervalu"). (Ex. D ¶ 2; Ex. E ¶ 2.) In connection with this loan, the Arrangers signed certain agreements with UNFI, pursuant to which UNFI promised to pay certain fees to the Arrangers in exchange for their commitment to provide the loan. (Ex. D ¶¶ 28-32; Ex. E ¶¶ 23-27.) The Arrangers reserved the right to syndicate the loan, and one of the agreements permitted the Arrangers to exercise certain "flex provisions" to ensure a successful syndication of the loan. (Ex. D ¶¶ 33-37; Ex. E ¶¶ 28-32.)

After signing, syndication of the loan proved difficult due to poor market conditions, the financial underperformance of UNFI and Supervalu, and lack of cooperation by UNFI. To encourage investor participation and fully syndicate the loan, the Arrangers took a number of actions, including invoking the flex provisions of the agreements. (Ex. D ¶¶ 50-54; Ex. E ¶¶ 45-49.) Prior to closing, the Arrangers informed UNFI that they were entitled to withhold from the loan's proceeds fees under their agreements with UNFI. (Ex. D ¶¶ 67-68, 84-87; Ex. E ¶¶ 62-63, 79-82.) UNFI objected to these actions, alleging that it "did as much as it could to stop" the

Arrangers from "violating" their obligations under their agreements with UNFI prior to closing. (Ex. D ¶¶ 88-90; Ex. E ¶¶ 83-85.)  And on October 22, 2018, the day of the acquisition's close, Quinn on behalf of UNFI sent a letter to shared counsel for the Arrangers in which it "demand[ed] that the Lenders cease any conduct to misappropriate UNFI's financing by charging fees to UNFI that the Lenders have concocted."  (Ex. F at 1.)  Quinn further "reserve[d] [UNFI's] right to pursue all available legal claims against the [Arrangers]."  (*Id.* at 3.)  The letter defined "Lenders" as the "financial institutions . . . committed to providing financing for UNFI to acquire [Supervalu]"—including U.S. Bank.  (*Id.* at 1.)[5]

Four months later, on January 30, 2019, UNFI sued.  Represented by Quinn, UNFI initiated this lawsuit (as previously defined, the "*Goldman/BOA* Action") against Goldman Sachs and Bank of America—but not U.S. Bank—alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud, arising from the syndication of the loan. (Ex. D.)  Specifically, the complaint in the *Goldman/BOA* Action alleges that Goldman Sachs and Bank of America wrongfully withheld $51.9 million in fees in breach of the parties' agreements.  (Ex. D ¶¶ 93-114.)  The *Goldman/BOA* complaint also alleges that Goldman Sachs and Bank of America breached the implied covenant of good faith and fair dealing under the same agreements by wrongfully exercising the flex provisions, which allegedly increased the cost of the financing to UNFI by more than $180 million.  (Ex. D ¶¶ 115-22.)[6]  Although U.S.

---

[5] In its response to U.S. Bank's pre-motion letter, Quinn implied that U.S. Bank did not have "a real concern about conflicts" because it did not raise the issue in October 2018.  (Dkt. No. 14 at 5.)  Quinn omitted half the story, however.  Counsel for the Arrangers responded to Quinn's October 22 letter the next day, identifying the numerous dispositive flaws in UNFI's complaints.  (Ex. G.)  The Arrangers believed that the dispute was then over, and UNFI did not raise any issue again until *months later*—despite having threatened suit "immediately following closing" (Ex. F at 3)—at which point U.S. Bank promptly made its objection to Quinn clear.

[6] The *Goldman/BOA* complaint also asserts a claim for fraud against only Goldman Sachs based on certain statements that Goldman Sachs allegedly made to UNFI during the loan's syndication.  (Ex. C ¶¶ 123-29.)

Bank was a party to the same agreements, also loaned money to UNFI, and is referenced multiple times therein, the *Goldman/BOA* complaint does not name U.S. Bank as a defendant.

Instead, on the very same day that Quinn filed the *Goldman/BOA* Action, UNFI—through a separate law firm, Coburn & Greenbaum—filed a complaint against U.S. Bank based on the same factual allegations (as previously defined, the "*U.S. Bank* Action").  (Ex. E.)  As demonstrated in the blackline attached as an exhibit to this motion (Ex. C), the complaints in the *Goldman/BOA* Action and the *U.S. Bank* Action contain large swaths of virtually identical language.  Not only do the two complaints arise out of the same operative facts, assert claims under the same contracts, and seek the same damages from the defendants, they use the same specific wording to do so.  Indeed, aside from changing the entities named as defendants, each cause of action that UNFI asserts against U.S. Bank in the *U.S. Bank* Action is nearly word-for-word identical to the causes of action that UNFI asserts against Goldman Sachs and Bank of America in the *Goldman/BOA* Action.  (*Compare* Ex. C ¶¶ 93-122, *with* Ex. D ¶¶ 88-117; *see also* Ex. C (blackline of the two complaints).)[7]

On February 14, 2019, counsel for the parties in both actions held a telephonic meet and confer regarding, among other things, Quinn's clear conflict.  Quinn denied the existence of any conflict, claiming—contrary to the terms of its engagement letter with U.S. Bank and its ethical obligations—that because Quinn itself had not filed the complaint against U.S. Bank, it had skirted any conflict.

There is only one plausible explanation for UNFI's contrivance of hiring Quinn to file one complaint in the *Goldman/BOA* Action but then hiring a different law firm to file a nearly identical complaint in the *U.S. Bank* Action:  U.S. Bank is a current client of Quinn.  And, under

---

[7] The only cause of action not asserted in the *U.S. Bank* Action that is asserted in the *Goldman/BOA* Action is a single count for fraud against Goldman Sachs.

the terms of their engagement letter, Quinn has promised not to represent another party in a dispute involving U.S. Bank.  (Ex. A at 5; Ex. B at 1-2.)  New York's Rules of Professional Conduct and Second Circuit law require that same result.  Despite UNFI's and Quinn's efforts, and for the reasons stated below, their contrivance does not rescue Quinn from having a disqualifying conflict in its representation of UNFI.

## ARGUMENT

### I.  The Court Should Allow U.S. Bank to Intervene to Move to Disqualify Quinn

#### A.  U.S. Bank Has a Right to Hold Quinn to Its Ethical and Legal Obligations

U.S. Bank may intervene in this action as a matter of right.  Federal Rule of Civil Procedure 24(a) provides that, "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).  A party moving to intervene as a matter of right must show that "(1) the application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may practically impair the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest."  *Sherman v. Town of Chester*, 339 F. Supp. 3d 346, 358 (S.D.N.Y. 2018) (internal quotation marks omitted).

Here, U.S. Bank acted timely because it sought leave to file this motion only two days after the notice of removal was filed in this case (*see* ECF No. 13), and before any other substantive motions were filed.  U.S. Bank also satisfies the other three requirements of Rule 24(a) because it is being sued by UNFI in a separate action for breach of the very same agreements, based on the very same allegations, as UNFI is suing Goldman Sachs and Bank of

8

America here.  *See Kirby v. Coastal Sales Assocs., Inc.*, 199 F.R.D. 111, 117 (S.D.N.Y. 2001)

(holding that intervention was appropriate where the applicant was a party to the contracts at

issue in the case).  More importantly, U.S. Bank has an interest in not having its current

attorneys—namely, Quinn, UNFI's counsel in this action—represent clients, and take positions,

that are directly adverse to U.S. Banks's interests, including those at issue in pending litigation.

No other party to this action can protect that interest on behalf of U.S. Bank, which, as explained

more fully below, will be unduly prejudiced if the *Goldman/BOA* Action is permitted to proceed

with Quinn representing UNFI—and essentially litigating against U.S. Bank.  In these

circumstances, courts routinely grant motions to intervene to allow clients to move to disqualify

their conflicted counsel.  *See, e.g.*, *Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*, No. 06-cv-

2875, 2007 WL 2593000, at *4 (S.D.N.Y. Sept. 7, 2007); *Rembrandt Techs., LP v. Comcast

Corp.*, No. 05-cv-443, 2007 WL 470631, at *2 (E.D. Tex. Feb. 8, 2007).[8]

**B.  The Court Should Permit U.S. Bank to Intervene in Order to Avoid Undue Prejudice**

Even if the Court finds that U.S. Bank does not meet the requirements for intervention as a

matter of right (and it does), U.S. Bank should still be allowed to intervene to prevent Quinn from

continuing to breach its contractual and ethical obligations to U.S. Bank.  The Court may, on a

timely motion, permit anyone to intervene who "has a claim or defense that shares with the main

action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "The words claim or

defense are not read in a technical sense, but only require some interest on the part of the

applicant."  *United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018) (internal

quotation marks omitted).  Permissive intervention is left to the broad discretion of the district

---

[8] *See also Oxford Sys., Inc. v. CellPro, Inc.*, 45 F. Supp. 2d 1055, 1056 (W.D. Wash. 1999); *GATX/Airlog Co. v. Evergreen Int'l Airlines, Inc.*, 8 F. Supp. 2d 1182, 1182 (N.D. Cal. 1998), *vacated on other grounds sub nom. GATX/Airlog Co. v. U.S. Dist. Court for N. Dist. of Cal.*, 192 F.3d 1304 (9th Cir. 1999).

court, *id.*, and "[t]he rule is to be liberally construed." *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018) (internal quotation marks omitted). The primary question in resolving a request for permissive intervention is whether "the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* (internal quotation marks omitted).

U.S. Bank has a "defense that shares with [this action] a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), because it is being sued by UNFI in the *U.S. Bank* action for breach of the same agreements that UNFI alleges were breached in this action on the same theories asserted in this action. *See Kirby*, 199 F.R.D. at 119 ("There are common questions of law and fact in this case, as both [the plaintiff]'s and [the intervenor]'s claims are for breach of the same contracts."); *N. River Ins. Co. v. O & G Indus., Inc.*, 315 F.R.D. 1, 6 (D. Conn. 2016) ("[T]he legal ramifications of the contract provisions are common questions of law."). But more than that, U.S. Bank has an interest in protecting its attorney-client relationship with Quinn. *See generally N.Y.C. Hous. Auth.*, 326 F.R.D. at 418 (F.R.C.P. 26(b) "only require[s] some interest on the part of the applicant"). The parties to the *Goldman/BOA* Action will suffer no prejudice if the Court permits U.S. Bank to defend its rights, but U.S. Bank will be significantly prejudiced if not permitted to do so and forced to functionally litigate against its own current counsel. The Court should exercise its discretion to prevent that injustice. *See Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 542 F. Supp. 2d 296, 305 (S.D.N.Y. 2008) (permitting movants to intervene to file a motion to disqualify "in light of the discretion district courts have in ruling on intervention, and the flexible nature of the rules governing intervention, and the Court's interest in protecting the adversarial process" (citations omitted)).

Finally, UNFI's conduct—splitting its claims across two cases for the sole purpose of obscuring the fact that Quinn is litigating adversely to its client U.S. Bank—imposes needless

burdens on the Court and defendants by requiring duplicative proceedings and double the briefing across two actions.  Thus, judicial efficiency weighs heavily in favor of intervention. *See In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 315 (D. Conn. 2009) (granting motion to intervene in part to "avoid[] duplicative discovery").

## II.   The Court Should Disqualify Quinn from Representing UNFI in This Action

Federal courts have the power and responsibility to regulate the conduct of attorneys who practice before them. *In re Snyder*, 472 U.S. 634, 645 n.6 (1985).  The "authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 55 (S.D.N.Y. 2017) (internal quotation marks omitted).  In deciding a motion to disqualify, the Court may consider "various sources of law, including the ABA Model Rules of Professional Conduct, the ABA Model Code of Professional Responsibility, and the New York Code of Professional Responsibility." *Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273, 275 (S.D.N.Y. 2004).  The Court may also disqualify an attorney "in the interests of justice."  ABA-BNA, Lawyers' Manual on Professional Conduct § 51:1901 (2007) ["ABA-BNA Lawyers' Manual"].

Disqualification is appropriate where, among other circumstances, "a lawyer's continued participation as counsel would impair the integrity of the proceeding or threaten an important interest of the moving party, such as confidentiality or loyalty."  ABA-BNA Lawyers' Manual § 51:1904 (citing Restatement (Third) of the Law Governing Lawyers § 6 cmt. i (2000)).  And, indeed, "an attorney owes to each of his clients" a "duty of undivided loyalty," *Cinema 5 Ltd. v. Cinerama Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976), and that duty cannot tolerate "an attorney's simultaneous representation of one existing client in a matter adverse to another existing client." *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010).  Such

11

representation "is prima facie improper" and requires the attorney "to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation."  *Id.* (internal quotation marks omitted); *accord, e.g.*, *Discotrade Ltd. v. Wyeth-Ayerst Int'l, Inc.*, 200 F. Supp. 2d 355, 358 (S.D.N.Y. 2002); *Flather v. U.S. Trust Co. of N.Y.*, No. 93 Civ. 7504 (RPP), 1994 WL 376088, at \*4-5 (S.D.N.Y. July 15, 1994).

In such circumstances, the burden on the conflicted attorney is "so heavy that it will rarely be met."  *GSI Commerce*, 618 F.3d at 209 (internal quotation marks omitted). Accordingly, "[w]hen a party moves for disqualification of an adversary's attorney, 'any doubt is to be resolved in favor of disqualification.'"  *Blue Planet*, 331 F. Supp. 2d at 275 (citing *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975)); *see also Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973) ("The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case.").

### A.      Quinn's Representation of UNFI Violates the Commitments in Its Engagement Letter with U.S. Bank

U.S. Bank is a current client of Quinn.  For years, Quinn has represented U.S. Bank in various actions in state and federal courts across the country, including in this very Court.  And under the terms of their engagement letter, Quinn has specifically promised U.S. Bank that "[i]f . . . contentious disputes or threats of litigation *involving U.S. Bank* arise during our representation of another client and U.S. Bank, [Quinn] *would not represent the other party with respect to such disputes or litigation*."  (Ex. A at 5 (emphasis added).)  U.S. Bank's Guidelines for Outside Counsel—to which Quinn expressly agreed to be bound (*id.* at 7)—additionally require that Quinn "refrain from representing any other party to a *transaction or dispute*

*involving any USB entity*" without U.S. Bank's consent, regardless of whether such abstention is "required by applicable ethical rules."  (Ex. B at 1-2 (emphasis added).)  It is therefore plain that Quinn has expressly promised to neither attack a transaction of U.S. Bank nor to participate in any dispute that involves U.S. Bank.  Yet the *Goldman/BOA* Action is *both* an attack on a U.S. Bank transaction *and* a dispute involving U.S. Bank:  U.S. Bank is one of the three Arrangers that UNFI alleges breached their contracts with it.  And Quinn has never obtained, or even asked for, a waiver from U.S. Bank to represent UNFI.

Before even examining the applicable ethical rules, the Court should disqualify Quinn from representing UNFI in this action on the basis of its breach of the engagement letter alone. It is self-evident that lawyers should be held to obligations they take upon themselves through an engagement letter.  *See, e.g.*, *Dr. Falk Pharma GmbH v. Generico, LLC*, -- F.3d --, 2019 WL 692670, at *6 (Fed. Cir. Feb. 20, 2019) (granting motion to disqualify and recognizing that the at-issue engagement letter imposed "a heightened degree of loyalty from key firms, requiring something more than mere adherence to the ethical rules").  Yet Quinn is flaunting its commitments to U.S. Bank by representing UNFI in an action that indisputably "involves" U.S. Bank as a signatory to the allegedly breached agreements.[9]  The Court should not sanction such conduct.  *See, e.g.*, *Cinema 5*, 528 F.2d at 1387 (affirming disqualification where representation created "the appearance of impropriety").  Quinn should be disqualified.

### B.    By Attacking the Loan Transaction, Quinn Is Directly Adverse to U.S. Bank

Separate and apart from the breach of its engagement letter, Quinn should be disqualified from representing UNFI because that representation is directly adverse to U.S. Bank, contrary to

---

[9] Indeed, as discussed further below, the claims against U.S. Bank were improperly split off from the *Goldman/BOA* Action because U.S. Bank is a necessary party to that action.  *See, e.g.*, *Ryan v. Stamp Co., Inc.*, 107 F. Supp. 2d 369, 388 (S.D.N.Y. 2000) ("It is well-established that a party to a contract which is the subject of litigation is considered a necessary party." (collecting cases)).

governing ethical rules.  It is well established that a lawyer may not undertake a representation "adverse to a current client without that client's informed consent."  N.Y. R. Prof'l Conduct 1.7 cmt. 6.  The New York Rules of Professional Conduct prohibit a lawyer from representing a client if "a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests."  N.Y. R. Prof'l Conduct 1.7(a).  The term "differing interests" includes "every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest."  *Id.* 1.0(f).  Similarly, the ABA Model Rules of Professional Conduct provide that "a lawyer shall not represent a client . . . if the representation will be directly adverse to another client."  ABA Model Rule 1.7(a).  In other words, "a conflict exists if dual representation either involves client interests that are antagonistic to one another, or creates a possibility that the lawyer's judgment or loyalty will be compromised." *New York v. United Parcel Serv., Inc.*, No. 15-cv-1136, 2016 WL 10672076, at *1 (S.D.N.Y. Sept. 2, 2016); *accord GSI Commerce*, 618 F.3d at 209 (requiring conflicted attorneys to meet the "heavy" burden of showing that "there will be no actual or *apparent* conflict in loyalties").

There can be no question that Quinn's representation of UNFI in the *Goldman/BOA* Action is directly adverse to U.S. Bank, violating these well-settled principles, and therefore requires disqualification.  Quinn's complaint in the *Goldman/BOA* Action asserts claims against Goldman Sachs and Bank of America that directly implicate U.S. Bank, its own client, in the exact same alleged wrongdoing.  Indeed, the *Goldman/BOA* Action attacks a U.S. Bank transaction and, if successful, could establish that the lenders of the loan to UNFI—*including U.S. Bank*—had breached their agreements with UNFI and are liable for millions of dollars in damages.  If Quinn were to succeed in this action, U.S. Bank may be exposed to contribution claims by Goldman and Bank of America.  At the very least, the outcome of the *Goldman/BOA*

Action—or, indeed, intermediate rulings along the way—would hold persuasive value in the *U.S. Bank* Action.  As explained above, the *Goldman/BOA* complaint alleges that Goldman Sachs and Bank of America, as lenders for the term loan, (1) wrongfully withheld $51.9 million in fees in breach of their agreements with UNFI, and (2) wrongfully exercised certain flex provisions for the term loan under one of those same agreements.  (Ex. D ¶¶ 93-122.)  But as the *Goldman/BOA* complaint explains, Goldman Sachs and Bank of America were not the only lenders for the term loan—U.S. Bank was also one of the lenders.  (Ex. D ¶ 2.)  And the overarching implication of the *Goldman/BOA* complaint is that UNFI (through Quinn) maintains that U.S. Bank committed the same wrongdoing as Goldman Sachs and Bank of America.

Indeed, we *know* this to be the case because the same day that the *Goldman/BOA* complaint was filed, Coburn & Greenbaum filed a nearly identical complaint against U.S. Bank in the *U.S. Bank* Action.  With only one exception, that complaint asserts the *same* causes of action as the *Goldman/BOA* complaint, under the *same* contracts, and for the *same* damages. The only material differences between the complaints are the identity of the defendants and the fraud claim against Goldman Sachs.  In other words, but for UNFI's and Quinn's contrivance of using Coburn & Greenbaum to actually file the complaint against U.S. Bank, Quinn would be suing its own client, U.S. Bank, for the same claims it is asserting against Goldman Sachs and Bank of America.  That much is apparent from Quinn's letter threatening to "pursue all available legal claims against the [Arrangers]," which does not distinguish U.S. Bank from Goldman Sachs or Bank of America.  (Ex. F at 3.)

The adversity of Quinn's representation of UNFI to U.S. Bank is stark, and it is irrelevant that Quinn has not directly sued U.S. Bank.  Courts routinely recognize that disqualification is warranted when a law firm's representation of one client in a litigation will require it to act

15

adversely to another client, even if the other client is not actually a defendant in the case. *See, e.g.*, *Celgard, LLC v. LG Chem, Ltd.*, 594 F. App'x 669, 671-72 (Fed. Cir. 2014) (disqualifying the law firm representing the plaintiff in a patent-infringement suit because the plaintiff's requested injunction would negatively impact the law firm's other, non-party client); *Arrowpac Inc. v. Sea Star Line, LLC*, No. 12-cv-1180, 2013 WL 5460027, at *10 (M.D. Fla. Apr. 30, 2013) (disqualifying the law firm representing a defendant in a price-fixing conspiracy lawsuit because one of the plaintiffs in a different suit arising from the same conspiracy was a client of that law firm); *Rembrandt*, 2007 WL 470631, at *4 (disqualifying the law firm representing the plaintiff in a patent-infringement suit because the plaintiff's arguments against the defendant "would have a significant practical effect" on the law firm's other, non-party client).[10]

In *Rembrandt*, for example, the court disqualified Fish & Richardson from representing the plaintiff in a patent infringement lawsuit against Comcast because the suit would adversely affect Time Warner, who was also one of Fish & Richardson's clients.  2007 WL 470361, at *1-2.  Although Time Warner was not a defendant in the suit where Fish & Richardson represented the plaintiff, the court concluded that disqualification was still required because Fish & Richardson did not need to appear against Time Warner to be "directly adverse" to it.  *Id.* at *4. The court explained that, even though a decision against Comcast in the lawsuit may not have been "binding" against Time Warner, Fish & Richardson's representation of the plaintiff was adverse to Time Warner because a finding of infringement against Comcast "would have a significant practical effect" on Time Warner, who relied on the same patents in its business.  *Id.*

---

[10] *See also GATX/Airlog*, 8 F. Supp. 2d at 1185 (disqualifying the law firm representing the plaintiff in a declaratory judgment action because the plaintiff's arguments would "probably be dispositive" of another client's arguments in a different case); *Vanderveer Group, Inc. v. Petruny*, No. 93-3677, 1994 WL 314257, at *7 (E.D. Pa. June 29, 1994) (disqualifying the law firm representing the plaintiff in an unfair trade practices suit because the suit directly implicated another one of the law firm's clients in a separate suit); *Avacus Partners, L.P. v. Brian*, Civ. A. No. 11001, 1990 WL 6576, at *3-4 (Del. Ch. Jan. 23, 1990) (disqualifying the law firm representing the plaintiff in an action challenging a merger because the law firm represented, in unrelated matters, the entity who wrote the fairness opinion), *rev'd on other grounds sub nom. In re Appeal of Infotechnology, Inc.*, 582 A.2d 215 (Del. 1990).

(stating that "there is a likelihood that the positions taken by [Fish & Richardson] in this case could, as a practical matter, prejudice Time Warner in subsequent proceedings").

A similar result was reached in *Arrowpac*. There, the court disqualified Baker Hostettler ("Baker") from representing Sea Star, a defendant in four related cases, because Nestlé, another of Baker's clients, was one of the plaintiffs suing Sea Star in one of the cases. 2013 WL 5460027, at *10-12. Although Baker did not represent Sea Star in the case where Nestlé was the plaintiff, the court nevertheless disqualified Baker from representing Sea Star in any of the cases because the four cases were nearly identical in both substance and procedural posture, and work product developed by Baker in the first three cases inevitably would be used against Nestlé, its own client, in the fourth case. *Id.* at *10-11. In disqualifying Baker, the court explained that the rule against conflicting representations "prohibits more than simply representing a client who is suing another current client; it encompasses *any* representation *directly* adverse to the interests of a current client." *Id.* at *10. The court concluded that Baker's work in the related cases would inform the positions taken by Sea Star's counsel in the case against Nestlé in which Baker did not appear. *Id.* The court explained that allowing Baker to participate in researching, drafting, or formulating arguments advanced by Baker lawyers in one related case but used by other lawyers in the case directly against Nestlé created a disqualifying conflict. *Id.* at *10. The court also found that, even if Baker's lawyers did not share information directly with Sea Star's other counsel, "they would certainly have to consult general counsel for their client." *Id.* Sea Star's general counsel would in turn "necessarily have to consult with a firm representing" Sea Star in the related Nestlé case and "could not be expected to ignore research or an argument made by Baker in the three matters in which Nestlé . . . [is not a] part[y] if that research or argument would be equally applicable in the Nestlé . . . case." *Id.*

17

The reasoning of these cases applies equally here.  Like in *Rembrandt* and *Arrowpac*, Quinn need not directly litigate against U.S. Bank for the Court to conclude that the firm is acting adversely to it.  *See Rembrandt*, 2007 WL 470631, at *4; *Arrowpac*, 2013 WL 5460027, at *10; *see also Celgard*, 594 F. App'x at 672 ("[I]t is the total context, and not whether a party is named in a lawsuit, that controls whether the adversity is sufficient to warrant disqualification.").  Instead, like in *Rembrandt*, Quinn's representation of UNFI in the *Goldman/BOA* Action is directly adverse to U.S. Bank because any decision against Goldman Sachs and Bank of America is likely to have a "significant practical effect" on U.S. Bank. *Rembrandt*, 2007 WL 470631, at *4.  In fact, the case for disqualification here is even stronger than the one in *Rembrandt*:  Not only does Quinn's complaint in the *Goldman/BOA* Action directly implicate U.S. Bank, but UNFI filed *an almost identical complaint* against U.S. Bank through separate counsel the same day.  There can therefore be no dispute that Quinn's advocacy on behalf of UNFI "could, as a practical matter, prejudice" U.S. Bank, *id.*—indeed, it has *already* been used against U.S. Bank.  Certainly that gives rise to an impermissible "actual or *apparent* conflict in loyalties."  *GSI Commerce*, 618 F.3d at 209.

The conduct of Quinn and Coburn & Greenbaum to date clearly indicates that they intend to coordinate (and, in fact, have coordinated) in litigating the two actions.  Should the two firms cease coordinating, Quinn's work on behalf of UNFI in the *Goldman/BOA* Action will undoubtedly still inform the positions taken by Coburn & Greenbaum in the *U.S. Bank* Action. Even absent direct coordination, Coburn & Greenbaum "could not be expected to ignore research or an argument made by" Quinn in the *Goldman/BOA* Action "if that research or argument would be equally applicable in the" *U.S. Bank* Action.  *Arrowpac*, 2013 WL 5460027, at *10 (finding

disqualification appropriate because "the arguments formulated and advanced by Baker lawyers [in one case] could result in the dismissal of the case brought by" its clients in another case).

These concerns are heightened here because the dispositive motion practice, discovery, and issues for trial between the two cases are likely to be identical. *See id.* at *11 (explaining that disqualification was also appropriate because the conflicted law firm would likely be required to take discovery relating to its own client). Indeed, it is for this reason that the Arrangers intend to file a motion to consolidate the *Goldman/BOA* Action and the *U.S. Bank* Action. In these circumstances, it is impossible for Quinn to conduct the discovery it would need to establish its claim against Goldman Sachs and Bank of America (two of the three Arrangers) without simultaneously developing evidence that would implicate U.S. Bank (the third Arranger). Moreover, it is unclear how Quinn could fully pursue the universe of relevant discovery without taking discovery of U.S. Bank, one of the signatories to the agreements that UNFI alleges were breached and therefore integral to an assessment of the parties' understanding of those agreements. The issue would recur at trial, where Quinn must either adversely cross-examine U.S. Bank or agree not to do so, to the detriment of UNFI.

Its involvement in the *Goldman/BOA* Action puts Quinn directly on a collision course with U.S. Bank. And even if Quinn somehow manages to not directly litigate against U.S. Bank, its prosecution of the *Goldman/BOA* Action will plainly influence Coburn & Greenbaum and prejudice U.S. Bank.[11] Again, the conflict is unavoidable. *See GSI Commerce*, 618 F.3d at 209.

---

[11] On the other hand, UNFI will suffer no prejudice should the Court disqualify Quinn: UNFI is already ably represented by Coburn & Greenbaum in the *U.S. Bank* Action, which is factually identical to the *Goldman/BOA* Action. Goldman Sachs and Bank of America would likewise suffer no prejudice, and they do not object to the relief requested by this motion.

### C.    Quinn Cannot Avoid Its Conflict by Having Another Firm Sue U.S. Bank

Quinn recognizes its conflict with U.S. Bank, which is why it arranged for a separate law firm—Coburn & Greenbaum—to represent UNFI in the *U.S. Bank* Action.  But that facade does not rectify Quinn's disqualifying conflict; Quinn devised and is pursuing a coordinated adverse strategy against a current client.  As an initial matter, this arrangement contravenes the requirement that a plaintiff sue all "necessary parties" to a case in a *single* action unless doing so would deprive the court of subject matter jurisdiction.  *See Spencer Stuart Human Resources Consultancy (Shanghai) Co. v. Am. Indus. Acquisition Corp.*, No. 17-cv-2195, 2017 WL 4570791, at *2 (S.D.N.Y. Oct. 12, 2017) (citing Fed. R. Civ. P. 19(a)).  Because U.S. Bank is a party to the same contracts as Goldman Sachs and Bank of America, it is a "necessary party" in the *Goldman/BOA* Action.  *See Ryan*, 107 F. Supp. 2d at 388 (collecting cases); *see also* 82 N.Y. Jur. § 105 (the general rule is that "the signatories to [an] instrument are necessary parties . . . in an action for breach of contract").  Once again, UNFI's approach imposes needless burdens and duplicative proceedings on the Court and defendants.

But even ignoring that procedural prohibition, the arrangement also does not help Quinn because the rule against conflicting representations "prohibits more than simply representing a client who is suing another current client; it encompasses *any* representation *directly* adverse to the interests of a current client."  *Arrowpac*, 2013 WL 5460027, at *10; *accord Avacus Partners*, 1990 WL 6576, at *3.  Therefore, as explained above, numerous courts have found adversity between a law firm and a client even when the client was not a defendant in the case and a different law firm was the one actually suing the client.  (*See supra*, Section II.A.)  This is particularly true where, as here, the purported "conflicts counsel" was aided by the other law firm in bringing the action against the client, including by drafting the pleadings used by the conflicts counsel.  *See, e.g.*, *Arrowpac*, 2013 WL 5460027, at *10-11 (finding a disqualifying

conflict where the two firms would, either directly or indirectly, "share information, research, and work product"); *Vanderveer Grp.*, 1994 WL 314257, at *6 (finding a disqualifying conflict where "it [was] obvious from the identical substantive language employed in pleadings and motions that are already a part of the record of this litigation that the attorneys are working closely together"); N.Y. City Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 2001-3 (explaining that conflicted lawyer may not share with conflicts counsel "documents concerning the legal strategy for the case" or "instruct the other lawyer or strategize on the best way to proceed or indicate which evidence already developed pertains to the case against the other client"); N.Y. City Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 2017-6 ("Counsel may not pass along to conflicts counsel an already drafted subpoena, or otherwise direct or influence conflicts counsel from behind the scenes."); *see also United States v. Baird*, No. CRIM.A. 6:05-30, 2005 WL 1676898, at *3 (E.D. Ky. July 15, 2005) (disqualifying law firm where "although submitted and signed separately, the [separately filed] responses are almost carbon-copies of each other and clearly indicate that they were prepared with collaboration").

The Second Circuit's decision in *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977) is on point. There, the plaintiff, Fund of Funds, retained Morgan Lewis to bring securities actions against a number of parties arising out of the Fund's purchase and sale of natural resources assets. *Id.* at 227. When Morgan Lewis was retained, it knew that litigation involving this common scheme would require it to sue one of its own clients, Arthur Andersen, the Fund's auditor. *Id.* at 228. In an attempt to avoid this conflict, Morgan Lewis filed one suit against all of the participants in the scheme except Arthur Andersen and then assisted another law firm in filing a parallel action against Arthur Andersen where Morgan Lewis was not named counsel. *Id.* The Second Circuit rejected this approach. The court found that because Arthur Andersen was a

"current and actual client" of Morgan Lewis, Arthur Andersen had "an absolute right to the firm's undivided loyalty," and Morgan Lewis's conduct had violated that right. *Id.* at 232-33.  The court explained that Morgan Lewis was extensively involved in the litigation against Arthur Anderson, even if it technically did not represent the Fund in that action, and that Morgan Lewis, among other things, allowed the conflicts counsel to "liberally use[] relevant portions of the complaint" that Morgan Lewis had drafted against the other participants in the scheme. *Id.* at 232.

Thus, as the Second Circuit has already held, the result is the same despite the fact that Quinn is not directly suing U.S. Bank or that a separate law firm represents UNFI in the *U.S. Bank* Action.  As explained above, Quinn's representation of UNFI is adverse to U.S. Bank, and that adversity requires its disqualification.  (*See supra*, Section II.A.)  That Quinn's representation of UNFI in the *Goldman/BOA* Action will require it to act adversely to U.S. Bank also distinguishes this case from *Sumitomo Corp. v. J.P. Morgan & Co.*, No. 99-cv-4004, 2000 WL 145747 (S.D.N.Y. Feb. 8, 2000), which Quinn has erroneously relied on to justify its conduct here.  There, Sumitomo hired Kronish Lieb to represent it in a lawsuit against Chase arising from a particular transaction.  Months later, Sumitomo retained Paul Weiss to represent it in a different lawsuit against J.P. Morgan arising from a separate transaction involving a related alleged trading scheme. *Id.* at *1-2.  Chase, a Paul Weiss client, moved to disqualify Paul Weiss from representing Sumitomo in the later-filed suit on the grounds that the representation was adverse to Chase.  Denying the motion, the court explained that Paul Weiss's representation of Sumitomo against J.P. Morgan did not adversely affect Chase because "Paul Weiss [was] not involved in attempting to establish wrongdoing by Chase or seeking a judgment that will directly impact Chase." *Id.* at *5.  That conclusion necessarily flowed from the fact that the two actions

"involve[d] different underlying transactions and relationships and [would] require many different witnesses."  *Id.* at *2 n.2.

Quinn's reliance on *Sumitomo* is therefore entirely misplaced.  Unlike Paul Weiss's representation in *Sumitomo*, Quinn plainly *is* "involved in attempting to establish wrongdoing by [U.S. Bank]" and *is* "seeking a judgment that will directly impact [U.S. Bank]."  This is not, as Quinn has suggested, simply a "positional conflict" where Quinn *might* advance legal arguments in its representation of its case that could be contrary to U.S. Bank's positions in the *U.S. Bank* Action.  Instead, Quinn is asserting causes of action against Goldman Sachs and Bank of America that implicate U.S. Bank in the same conduct, and, if successful, could establish that all of the Arrangers—including U.S. Bank—had breached their agreements with UNFI.  This conflict requires disqualification.  *See Arrowpac*, 2013 WL 5460027, at *10 (finding a disqualifying conflict where "[t]he realistic and practical effect" of arguments made by the conflicted counsel was "direct" and "material"); ABA-BNA Lawyers' Manual at § 51:115 (citing *Sumitomo* for the rule that a lawyer may not "attempt to establish wrongdoing by [its] client or seek a judgment that would directly impact the client").

Indeed, the very New York City Bar opinion cited by Quinn in support of its contrived attempt to circumvent its legal and ethical obligations (Dkt. No. 14 at 4) recognizes that "there predictably are circumstances where a lawyer's attempt to limit the scope of her engagement [through conflicts counsel] will be doomed," including where, "in order to advance one client's interests, the lawyer must harm the interests of the other client."  N.Y.C. Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 2001-3 (2001).  That is precisely the situation here:  Quinn cannot litigate against only two of the three similarly situated Arrangers; the same contracts, evidence, and theories apply to all three.  Its attempt to obfuscate that fact is "doomed."

23

## CONCLUSION

For the foregoing reasons, U.S. Bank respectfully requests that the Court allow it to intervene in this action and disqualify Quinn from representing UNFI.

Dated:   New York, New York
         March 8, 2019

DAVIS POLK & WARDWELL LLP

By:   */s/ Lawrence Portnoy*
      Lawrence Portnoy
      Andrew S. Gehring
      Daniel S. Magy

450 Lexington Avenue
New York, New York 10017
(212) 450-4000
lawrence.portnoy@davispolk.com
andrew.gehring@davispolk.com
daniel.magy@davispolk.com

*Attorneys for U.S. Bank National Association*